[No. E005111. Fourth Dist., Div. Two. May 11, 1989.]

RANDI FJAERAN, Plaintiff and Appellant, v.
BOARD OF SUPERVISORS OF SAN BERNARDINO COUNTY,
Defendant and Respondent;
SYLVIA STEED et al., Real Parties in Interest and Respondents.

COUNSEL

McCann & Goldstein and C. Daniel Carroll for Petitioner and Appellant.

Alan K. Marks, County Counsel, and Dawn Stafford, Deputy County Counsel, for Defendant and Respondent.

No appearance for Real Parties in Interest and Respondents.

OPINION

McDANIEL, J.—Randi Fjaeran (Fjaeran) has appealed from a judgment denying her petition for a writ of mandate which would have compelle ' respondent San Bernardino County Board of Supervisors (the County) to

set aside its decision distributing excess proceeds from a tax sale of real property to real parties in interest Gregorio Estrada (Estrada), Michele Morrow (Morrow) and Sylvia Steed (Steed), and instead to order that the excess proceeds first be applied to Fjaeran's claim.

## FACTS

Richard Sylstra (Sylstra), Fjaeran's predecessor in interest, obtained a judgment in Orange County Superior Court against S & J Management, Inc., Western Skies Development Corporation, and others (S & J Management).

On June 9, 1980, Sylstra recorded an abstract of this judgment in the Office of the County Recorder of San Bernardino (county recorder), which thus became a lien against real property located in San Bernardino and owned by S & J Management.

On August 12, 1980, real party in interest Estrada also recorded an abstract of judgment against S & J Management with the county recorder, which thus became a judgment lien junior to Sylstra's.

On August 15, 1980, real party in interest Morrow also recorded an abstract of judgment against S & J Management with the county recorder's office, which thus became a judgment lien junior to both Sylstra's and Estrada's judgment liens.

Steed, the third real party in interest, was not a judgment creditor of S & J Management, but instead held title to various parcels on behalf of S & J Management based on grant deeds recorded in 1978 and 1979.

On May 14, 1985, Sylstra assigned and transferred all his right, title and interest in his judgment against S & J Management to Fjaeran, together with all "claim and demand thereon" and "all rights to execute and to all other legal processes to collect the said judgment."

On May 15, 1985, one day *after* this assignment, the County of San Bernardino sold S & J Management's real property to satisfy past-due property taxes.

In June 1986, Fjaeran filed claims with the County, pursuant to Revenue and Taxation Code section 4675, for excess proceeds from the tax sales. Each of these claims stated the claim was based on the abstract of judgment which Sylstra had recorded, and included copies of Sylstra's recorded

abstracts of judgment and the notarized and witnessed assignment of judgment from Sylstra to Fjaeran.

Some time within a year after the tax sale, Estrada, Morrow and Steed also had filed claims with the county for the excess proceeds. Estrada and Morrow, as judgment creditors, filed their claims pursuant to Revenue and Taxation Code section 4675, subdivision (a), which gives priority to lienholders of record before the tax sale. Steed, as a grantee, filed her claim pursuant to Revenue and Taxation Code section 4675, subdivision (b), which gives lower priority to former owners of the property sold for delinquent taxes than to lienholders of record. Thus, pursuant to section 4675, Steed's claims clearly were junior to those of claimants, such as Fjaeran, Estrada and Morrow, whose claims were based on judgment liens—assuming, of course, that their claims complied with the section's requirements for filing claims.

In April 1987, the County denied Fjaeran's claims because she did not have an "Assignment of Excess Proceeds" and was not "in compliance with section 4675. . . ." The County approved payment of 1 percent of the excess proceeds to Morrow, 37 percent of the excess proceeds to Estrada, and 62 percent of the excess proceeds to Steed. Fjaeran then filed a timely petition for writ of mandate in the superior court, seeking an order to compel the County to set aside its decision and to enter an order that the excess proceeds be distributed to Fjaeran.

The superior court denied Fjaeran's petition, based on a statement of decision in which it concluded that Fjaeran was required by Revenue and Taxation Code section 4675 to have recorded her assignment before the date of the tax deed and to have submitted a claim which proved that her assignor had been informed of the amount of the excess proceeds and of his right to file a claim for the proceeds in his own behalf, and that she had failed to fulfill either of these requirements. The superior court also stated that the legislative history of section 4675 and the section's language "encompass[ed] a scheme analogous to the recording statutes for real property," and that this resulted in certainty and clarity for those seeking excess proceeds and eased the administrative burden of the County which, absent such clear guidelines, would be faced with the necessity of interpleader actions to resolve disputed claims.

Fjaeran filed timely notice of appeal and, on appeal, in a well-written and reasoned brief, contends that (1) she is a "party of interest" within the meaning of Revenue and Taxation Code section 4675, and thus entitled to share in the excess proceeds, regardless of whether she recorded her assignment of judgment before the tax sale, and (2) she was not required to obtain

from her assignor and to file the kind of very specific assignment of right to claim excess proceeds referred to in section 4675. We agree, and reverse the judgment.

### Discussion

*Introduction*

■ When real property is sold for delinquent taxes, the amount realized by the sale which is over and above the sums necessary to satisfy the taxes and cost of collection is termed "excess proceeds."

At one time, such excess proceeds remained the property of the state. (See *Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120, 131 [134 Cal.Rptr. 238].) However, in 1976, the Legislature enacted Revenue and Taxation Code section 4675, which allows certain persons, referred to by section 4675 as "parties of interest," to file claims for such excess proceeds with the county. The section also allows these parties of interest, *after* the property has been sold by the taxing authority, to assign their right to claim such excess proceeds by complying with certain requirements.

*Who May File a Claim for Excess Proceeds*

Revenue and Taxation Code section 4675 provides, in relevant part, *"Any party of interest in the property may file with the county a claim for the excess proceeds,* in proportion to his or her interest held with others of equal priority in the property at the time of sale, at any time prior to the expiration of one year following the recordation of the tax collector's deed to the purchaser. [¶] . . . *For the purposes of this article, parties of interest and their order of priority are:* [¶] (a) First, *lienholders of record prior to the recordation of the tax deed to the purchaser,* in the order of their priority; and [¶] "(b) Then, any person with title of record to all or any portion of the property prior to the recordation of the tax deed to the purchaser. . . ." (Italics added.)

■ Under this definition, Sylstra, petitioner's assignor, who had recorded abstracts of judgment on the subject property in 1980, was clearly a lienholder of record prior to the recordation of the tax deed and as such, as a "party of interest," entitled to file with the County a claim against the excess proceeds.

■ The question which then must be answered is whether or not petitioner, as Sylstra's assignee, was *also* entitled to file such a claim. Because, as discussed below, nothing in Revenue and Taxation Code section 4675 abrogates existing law related to pre-tax-sale assignments, placing an assignee "in the shoes" of his or her assignor, we are compelled to conclude that Fjaeran was entitled to file a claim for the excess proceeds because of her status as the assignee of a "party of interest."

■ A judgment creditor may assign to a third person the right represented by a judgment. An assignment of the rights represented by a judgment is perfected and becomes enforceable against third persons upon execution and delivery to the transferee of an assignment of the judgment in writing. (Civ. Code, § 954.5, subd. (a).)

An assignment of judgment rights need not be filed with the court in order to accomplish the transfer of the interest in the judgment. (Civ. Code, § 954.5, Law Revision Com. com., 1982 addition.) Filing or recording an assignment of judgment, however, *does* serve two purposes. First, it allows an assignee to obtain a *writ of execution, or to use other enforcement remedies provided for in the Code Civil Procedure.* (Code of Civ. Proc., § 673, Law Revision Com. com.; Code Civ. Proc., § 681.020.) Second, it establishes the assignee's priority in relation to other assignees of the *same* judgment rights in the event that the original judgment creditor assigns his or her rights in the judgment to more than one assignee. (Civ. Code, § 954.5, subd. (b).) *But, to reiterate, the assignment is enforceable against third parties regardless of whether the assignment has been recorded or filed.*

The County urges, nonetheless, that Fjaeran did not have an *enforceable* assignment of judgment because Code of Civil Procedure section 681.020 provides that: "An assignee of a judgment is not entitled to enforce the judgment under this title unless an acknowledgement of assignment of judgment to that assignee has been filed under section 673 or the assignee has otherwise become an assignee of record."

Code of Civil Procedure section 681.020, however, merely precludes a judgment creditor's assignee, who has not filed or recorded the assignment, from "enforc[ing] the judgment *under this title,*" i.e., under the specific enforcement provisions of title 9 of the Code of Civil Procedure. ■
■ Otherwise, as noted above, the execution and delivery of a written assignment operates to transfer to the assignee all other rights represented by the judgment, *including the right to claim excess proceeds pursuant to Revenue and Taxation Code section 4675, subdivision (a).*

■ As noted above, the trial court was concerned that allowing a pre-tax-sale assignee of a judgment and its attendant lien, who has not recorded

his or her assignment, to file a claim for excess proceeds would create an administrative burden for the County.

In our opinion, such concern is unwarranted. Revenue and Taxation Code section 4675 does not require the County to go out and search for parties of interest. Instead, it is up to the claimants themselves to come forward and file their claims within one year after the tax sale. Thus, the fact that a pre-tax-sale assignee has not recorded his or her assignment can make no difference to the County, *because the County is not required to search the chain of title.* The only additional effort required is that the County will have to review assignments of judgments and determine the authenticity and validity of such assignments, a task not significantly different than determining the authenticity and validity of the abstracts of judgments, grant deeds, and similar documents which form the basis of nonassigned claims. We note that, in this particular case, it is apparent from the record that the County did not dispute the authenticity or validity of Fjaeran's assignment.

### *Who Must Comply With the Specific Assignment Provisions of Section 4675*

■ The County also argues that it properly denied Fjaeran's claim because she did not submit proof with her claims that the amount of excess proceeds had been disclosed to Sylstra and that Sylstra had been advised of his right to file a claim for the excess proceeds on his own behalf, as required by Revenue and Taxation Code section 4675. While it is true Fjaeran's claim did not indicate that this information had been disclosed to Sylstra, we conclude that Fjaeran, as a pre-tax-sale assignee, was not required to submit such proof.

Revenue and Taxation Code section 4675 provides, in relevant part, "*After* the property has been sold, a party of interest in the property at the time of the sale may assign his or her right to claim the excess proceeds only by a dated, written instrument that explicitly states that the right to claim the excess proceeds is being assigned, and only after each party to the proposed assignment has disclosed to each other party to the proposed assignment all facts of which he or she is aware relating to the value of the right that is being assigned. Any attempted assignment that does not comply with these requirements shall have no effect." (Italics added.)

Sylstra assigned the rights represented by his judgment against S & J Management to Fjaeran *before* the tax sale, and thus the specific disclosures set out in Revenue and Taxation Code section 4675 were not applicable to his assignment to Fjaeran.

■ The County also urges, pursuant to another section of the same paragraph quoted above, that Fjaeran's assignment was not valid because:

"In addition, any person or entity who in any way acts on behalf of, or in place of, any party of interest with respect to filing a claim for any excess proceeds shall submit proof with the claim that the amount of excess proceeds has been disclosed to the party of interest and that the party of interest has been advised of his or her right to file a claim for the excess proceeds on his or her own behalf."

However, it is clear that this provision, following as it does a specific provision related to assignments, was intended to apply to situations *other* than assignments, such as agency or similar relationships, and that it was *also* intended to apply to such relationships which were entered into *after* the date of the tax sale, because the amount of excess proceeds cannot be known, and thus cannot be disclosed to a party of interest, until *after* the property has been sold and the taxes, penalties, interest and administrative costs have been deducted. Therefore, the County cannot rely on this portion of Revenue and Taxation Code section 4675 as justification for its denial of Fjaeran's claims.

## DISPOSITION

The judgment appealed from is reversed, and the trial court is directed to enter a new and different order granting Fjaeran's petition.

Campbell, P. J., and Staniforth, J.,* concurred.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.